**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**JUN 7 2004**

**TENTH CIRCUIT**

**PATRICK FISHER**
**Clerk**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

WILLARD MARVIN RICE,

      Defendant - Appellant.

No. 02-1383
(D.C. No. 99-CR-211-N)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **MURPHY** and **McCONNELL**, Circuit Judges.

      Willard Martin Rice ("Defendant") pled guilty to knowingly and unlawfully

possessing a machine gun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2), and

was sentenced to 49 months' imprisonment. This appeal followed. We exercise

---

      [*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and AFFIRM Defendant's conviction and sentence.[1]

## BACKGROUND

From September 1997 through October 1999, undercover ATF Agents Blake Boteler and Darrell Edwards investigated members and associates of the Sons of Silence Motorcycle Club for narcotics and firearms violations. (PSR at 4.) Agent Boteler was introduced to Defendant during the course of the investigation (Sent. Tr. at 59), and Defendant told Agent Boteler that he possessed an unregistered Sten machine gun (id. at 62). On July 14, 1998, Defendant showed Agent Boteler the parts necessary to manufacture a machine gun and said that he could acquire Sten machine gun kits for $100 each. (PSR at 5.) On September 26, Agent Boteler asked Defendant to manufacture and sell him five Sten machine guns. (Id.)

On October 1, Defendant agreed to manufacture the machine guns, and he and Agent Boteler agreed on a price. (Id.) Defendant said that he would have some of the parts sent to his neighbor's house so there would be no record of the

---

[1]On May 6, 2004, Defendant moved to expedite these proceedings. We dismiss that motion as moot. Defense counsel has also filed a motion to withdraw under Anders v. California, 386 U.S. 738 (1967). Because we find that Defendant has raised no non-frivolous issues on appeal, we grant that motion.

parts coming to Defendant's address. (Id.) Agent Boteler then advised Defendant that his actions would become illegal when Defendant assembled the firearms. (Id.) Defendant told Agent Boteler that he would advise Steven Kressin, the Sons of Silence National Vice President, of the deal. (Id.) Kressin was to weld the guns together. (Id.) Agent Boteler then said to Defendant, "I want to make sure this is something you want to do and I ain't twisting your arm." (Id.) Defendant stated that Agent Boteler was not twisting his arm and that he did not mind doing the deal. (Id.)

Defendant thereafter manufactured and sold a total of 20 machine guns to Agent Boteler on five occasions from October 19, 1998, to September 16, 1999. (Doc. 1198 at 3.) During the course of these transactions, Defendant informed Agent Boteler that his illegal machine gun trafficking was "extremely insulated" to avoid detection. (See Doc. 1316, Att. 3156.) Specifically, Defendant informed Agent Boteler that several people involved only deal in individual parts of guns. (Id.) Defendant stated that he had been dealing in illegal machine guns for years and that there was no chance of being caught. (Id.)

After completion of the investigation, Defendant and eighteen co-defendants were charged in a 27-count indictment with various narcotics and firearms offenses. (See Doc. 407.) Defendant was charged with five counts of knowingly and unlawfully possessing a machine gun, in violation of 18 U.S.C.

§ 922(o).  (See id. at 8-10.)  In exchange for dismissal of the remaining counts, Defendant pled guilty to Count VI, which charged him with knowingly and unlawfully possessing one machine gun on October 19, 1998.  (Docs. 407, 1198-99, 1362.)  Defendant was sentenced to 49 months' imprisonment.

## DISCUSSION

In this appeal, Defendant challenges the constitutionality of the statute under which he was convicted, the calculation of his base offense level, and the district court's decision not to grant Defendant a downward departure based on the government's alleged sentencing factor manipulation.  We address each argument in turn.

### A.  Constitutionality of 18 U.S.C. § 922(o)

Defendant first argues that 18 U.S.C. § 922(o), the statute under which he was convicted, is an impermissible exercise of the authority granted to Congress under the Commerce Clause.  In United States v. Wilks, we upheld § 922(o) as a permissible exercise of the power granted to Congress under the Commerce Clause.  58 F.3d 1518, 1522 (10th Cir. 1995); see also United States v. Haney, 264 F.3d 1161, 1171 (10th Cir. 2001).

### B. Sentencing as a "Prohibited Person"

Defendant next argues that his sentence is improper because he was indicted and convicted under § 922(o) but was sentenced as a "prohibited person" under § 922(g)(3), an offense that was not charged in the indictment. Defendant appears to be arguing that the district court's application of the Sentencing Guidelines violated his Fifth and Sixth Amendment rights under Apprendi v. New Jersey, 530 U.S. 466 (2000). We review the district court's legal conclusions under the sentencing guidelines *de novo* and factual determinations for clear error. United States v. Lacey, 86 F.3d 956, 962 (10th Cir. 1996).

The Supreme Court in Apprendi held that "[o]ther than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Apprendi is not implicated when judges find facts increasing the sentence *below* the maximum sentence for the crime committed. See Harris v. United States, 536 U.S. 545, 565 (2002) ("[F]acts guiding judicial discretion below the statutory maximum need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt."). Accordingly, a defendant need not necessarily be charged in the indictment as a prohibited person in order for the defendant's status as a prohibited person to be used in the

base offense level calculation. United States v. Bennett, 329 F.3d 769, 778 (2003).

In this case, Defendant pled guilty to unlawful possession of a machine gun in violation of 18 U.S.C. § 922(o). The statutory maximum for a § 922(o) violation is 10 years. 18 U.S.C. § 924(a)(2). Pursuant to § 2K2.1(a)(4) of the Sentencing Guidelines, the base offense level for unlawful possession of this type of firearm by a "prohibited person" is 20.[2] See U.S.S.G. § 2K2.1(a)(4). A "prohibited person" is "any person described in 18 U.S.C. § 922(g) or § 922(n)." U.S.S.G. § 2K2.1 cmt. 6. Section 922(g)(3) prohibits the possession of a firearm by any person "who is an unlawful user of or addicted to any controlled substance." 18 U.S.C. § 922(g)(3).

The district court concluded that Defendant was a prohibited person under § 922(g)(3) based on evidence that Defendant ingested marijuana and/or methamphetamine on numerous occasions after June 1998. (Memo. of Sent. Hrg. at 2.) Accordingly, the court assigned Defendant a base offense level of 20 which, after adjustments to the offense level and in conjunction with his criminal history category, resulted in a sentencing range of 41 to 51 months' imprisonment. The court sentenced Defendant to 49 months' imprisonment, well

---

[2]The district court advised Defendant before he entered his plea that his base offense level would be 20 if the court found Defendant to be a "prohibited person." (Doc. 1198 at 4.)

below the 10-year statutory maximum for a § 922(o) offense. Because the sentence imposed fell below the statutory maximum, there was no violation of Defendant's Fifth and Sixth Amendment rights under <u>Apprendi</u>. <u>See</u> <u>Bennett</u>, 329 F.3d at 778.

### C.  Sentencing Factor Manipulation

Defendant argues that the district court erred in declining to depart downward based on the government's sentencing factor manipulation. Again, we review the district court's legal conclusions under the sentencing guidelines *de novo* and factual determinations for clear error.[3] <u>Lacey</u>, 86 F.3d at 962.

Arguments presented as "sentencing factor manipulation" or "sentencing entrapment" are analyzed under the "outrageous conduct" standard that is invoked to prevent the government from prosecuting a crime developed through egregious investigatory tactics. <u>Lacey</u>, 86 F.3d at 963. "[T]he relevant inquiry is whether, considering the totality of the circumstances in any given case, the government's conduct is so shocking, outrageous and intolerable that it offends the universal sense of justice." <u>Id.</u> at 964 (internal quotations omitted). The remedy is

---

[3]In general, we have no jurisdiction to review the district court's refusal to grant a downward departure. <u>United States v. Davis</u>, 900 F.2d 1524, 1529-30 (10th Cir. 1990). Nonetheless, we have accepted jurisdiction to review a district court's assessment of a defendant's request for downward departure based on sentencing factor manipulation. <u>Lacey</u>, 86 F.3d at 962 n.2.

reserved for the most egregious of cases due in primary part "to the reluctance of the judiciary to second-guess the motives and tactics of law enforcement officials." Id.

We have said that "[t]o succeed on an outrageous conduct defense, the defendant must show either: (1) excessive government involvement in the creation of the crime, or (2) significant governmental coercion to induce the crime." United States v. Pedraza, 27 F.3d 1515, 1521 (10th Cir. 1994). "[I]t is not outrageous for the government...to induce a defendant to repeat, continue, or even expand previous criminal activity." Id. "In inducing a defendant to repeat or expand his criminal activity, it is permissible for the government to suggest the illegal activity, provide supplies and expertise, and act as both a supplier and buyer of illegal goods." Id. Law enforcement officers are often justified in increasing the scope of criminal activity in a sting operation, especially when attempting to ensnare those persons higher up in the criminal enterprise. Lacey, 86 F.3d at 965.

In the instant case, Defendant received a 4-level enhancement based on his manufacture and sale of 20 machine guns to Agent Boteler. (See Memo. of Sent. Hrg. at 2.) Defendant claims that the government engaged in sentencing factor manipulation by providing the capital for him to purchase the materials required for the manufacture of additional machine guns and by inducing Defendant to

continue manufacturing machine guns. Accordingly, Defendant requested a 4-level downward departure.

Agents Boteler and Edwards were engaged in a two-year undercover narcotics and firearms investigation of Defendant and others associated with the Sons of Silence. (PSR at 4.) The government explained that the purpose of Agent Boteler's repeated machine gun purchases was to identify additional persons involved in the manufacture of the guns. (See Doc. 1316 at 11-12.) Indeed, Defendant had informed Agent Boteler that at least one member of the Sons of Silence (Kressin) was involved in the manufacture of the guns and that Defendant's neighbors might also have been involved. (See PSR at 5.) In addition, Defendant had told Agent Boteler that his illegal machine gun trafficking was "extremely insulated" to avoid detection. (See Doc. 1316, Att. 3156.)

In light of this evidence that others were involved in Defendant's criminal enterprise, Agent Boteler's repeated purchases of unlawful machine guns from Defendant does not amount to conduct so "shocking, outrageous and intolerable" as to justify a downward departure. Accordingly, we find no error in the district court's decision not to grant a downward departure on this basis.

**CONCLUSION**

In sum, we conclude that the statute under which Defendant was convicted is constitutional, that Defendant was properly sentenced as a "prohibited person" for a violation of 18 U.S.C. § 922(o), and that the district court did not err in refusing to grant a downward departure based on Defendant's claim of sentencing factor manipulation. Accordingly, we AFFIRM Defendant's conviction and sentence.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge