**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 22, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROGER MOSS,

    Defendant - Appellant.

No. 22-3101
(D.C. No. 6:20-CR-10038-JWB-1)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **CARSON**, **BALDOCK**, and **EBEL**, Circuit Judges.

_____

A federal district court in Kansas sentenced Defendant Roger Moss to 255-months' imprisonment and ordered him to forfeit $ 25,000 in "drug proceeds." This was after a jury convicted Defendant on (1) three counts of possession with intent to distribute controlled substances—methamphetamine, heroin, and cocaine—all in violation of 21 U.S.C. § 841(a)(1), (2) one count of possession of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c), and (3) one count of possession of a firearm while an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3). Defendant now appeals both his convictions and sentence, raising the following issues: 1. Whether the district court plainly erred in

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

denying Defendant a pretrial hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), because the trial evidence showed officers recklessly omitted material information from the search-warrant affidavit.  2.  Whether the district court erred in denying Defendant's motion to dismiss the § 922(g)(3) charge because the statute is unconstitutionally vague as applied to the facts.[1]  3.  Whether the district court plainly erred by (a) admitting testimony in violation of both hearsay and best evidence rules that two of the thirteen firearms recovered from Defendant's residence were reported stolen, and (b) admitting testimony suggesting guilt by association, namely that a witness kept firearms in his home to protect his own stash of drugs and money.  4.  And finally, whether the district court plainly erred by finding that the $ 25,000 in cash constituted "proceeds" of Defendant's drug offenses and was subject to forfeiture.  Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we analyze each issue in turn, discussing only the record facts (with which the parties should be well familiar) necessary to our resolution of the particular issue. Ultimately, we affirm the jury's judgments of conviction, but vacate the district court's forfeiture order upon the Government's concession that the facts presented do not support such order.

---

[1]  Defendant also raises the issue of whether the district court plainly erred by failing to hold § 922(g)(3) unconstitutional on its face.  That issue is foreclosed in this Court by our recent decision in *United States v. Morales-Lopez*, 92 F.4th 936 (10th Cir.), *cert. denied*, 2024 WL 4427054 (2024).  In *Morales-Lopez*, we held a vagueness challenge to § 922(g)(3) "cannot be aimed at the statute on its face but must be limited to the application of the statute to the particular conduct charged." *Id.* at 941 (quoting *United States v. Reed*, 114 F.3d 1067, 1070 (10th Cir. 1997)).

I.

Defendant first argues he was entitled to a pre-trial *Franks* hearing before the district court ruled on his motion to suppress evidence taken from his residence. According to Defendant, the affidavit in support of the warrant to search his residence recklessly omitted facts material to the state judge's probable cause determination, namely that (1) multiple trash pulls and hours of surveillance yielded no evidence of any drug activity at Defendant's residence, (2) officers did not believe Defendant was selling drugs directly out of his residence, and (3) officers were aware Defendant had a storage unit that "might" be involved. Defendant acknowledges that because his argument is based on trial evidence and he did not renew his *Franks* motion at trial, our review is for plain error. *United States v. Bass*, 661 F.3d 1299, 1303 (10th Cir. 2011).

In *Franks*, the Supreme Court held the Fourth Amendment requires a hearing upon a defendant's request "where the defendant makes a substantial preliminary showing that [1] a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . [2] the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56. We later extended *Franks* to material facts intentionally or recklessly omitted from the affidavit that, if included, would negate a finding of probable cause. *Stewart v. Donges*, 915 F.2d 572, 582–83 (10th Cir. 1990).

In *Stewart*, we explained that "not every omission of relevant information will be regarded as 'material.'" *Id.* at 582 n.13. "The omitted information must be *so*

3

*probative as to negate probable cause*," *id.* (emphasis added), with probable cause defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Our "duty . . . is simply to ensure that the magistrate had a 'substantial basis for concluding' that probable cause existed." *Id.* (internal brackets and ellipses omitted).

Defendant acknowledges that the affidavit in support of the search warrant "establishes probable cause to believe [Defendant] distributed controlled substances" (and it plainly does), but says "the nexus between his drug activity and the apartment is thin." Aplt's Op. Br. at 24. We think otherwise. To be sure, our precedents require a nexus between a defendant's drug dealing and his residence before probable cause exists to search the residence. *United States v. Bigelow*, 562 F.3d 1272, 1278 (10th Cir. 2009). But where probable cause exists to believe a defendant is dealing drugs, we have explained that "little 'additional evidence' is generally required" before probable cause exists to search the defendant's residence. *Id.* at 1279. "We have indicated that a sufficient nexus is established once 'an affidavit describes circumstances which would warrant a person of reasonable caution' . . . [to believe] that 'the articles sought' are at a particular place." *Id.* In other words, "the nexus between the place to be searched and the evidence sought may be established through normal inferences about the location of evidence." *Id.* at 1280. "In some cases, the 'additional evidence' linking an individual's suspected illegal activity to his home has thus come in the form of an affiant officer's statement that certain evidence—in

4

his or her professional experience—is likely to be found in a defendant's residence." *Id.* at 1280 (citing *United States v. Sanchez*, 555 F.3d 910, 913 (10th Cir. 2009)).

We have such a statement here. Before presenting evidence that Defendant resided at 2021 N. Broadmoor, Apt. 603 in Wichita, Kansas, and was delivering drugs to numerous individuals throughout the area, the affiant officer states in paragraph seven that "[b]ased on information provided to [him] by fellow officers . . . , as well as [his] experience and training," the officer believed probable cause existed to search Defendant's residence for evidence of drug dealing. This belief was well founded. For instance, the affidavit states that one buyer, James Shaw, after being caught with a substantial quantity of cocaine, told police he spent up to $ 4,400 buying cocaine from Defendant twice a week. Shaw further stated that Defendant *delivered* illegal drugs to him in a black Ford Taurus, identified as Defendant's vehicle. On one date, Shaw said Defendant "*drove to his residence*" and provided him with two ounces of cocaine. (emphasis added). Another buyer, Carol Robinson, also after being caught with drugs, told police she was concerned that police would arrest her drug supplier because they knew both his nickname "Reggie," and his vehicle, a "black four-door sedan." Officers believed Robinson was referring to Defendant's alias of "Reggie" and the black four-door Taurus he drove.

The search warrant affidavit also set forth much information obtained from a GPS Tracker that police had previously placed on Defendant's vehicle pursuant to an earlier warrant. For example, Defendant, over a span of two weeks just a month prior to his arrest, made more than forty stops at both residences and parking lots. The

5

stops generally lasted two to four minutes, which is consistent with selling drugs. Paragraph 26 provides an illustration of Defendant's typical pattern. The paragraph states that on one day in December 2019, Defendant's vehicle left his residence and went to a first location where it remained for eight minutes, a second location where it remained for one minute, a third location where it remained for three minutes, a fourth location where it remained for two minutes, and a fifth location where it remained for twelve minutes. Defendant's vehicle then returned to his residence. Around the same time, the GPS Tracker logged Defendant's vehicle as appearing multiple times for short stays at Shaw's and Robinson's respective residences, as well as at the residence of a third suspected drug user, April Harding.

Importantly, the affidavit represents that after the affiant and another officer analyzed the GPS data, they were unable to identify Defendant's source of supply or the location of a stash house. The affidavit explained that if Defendant used a stash house, a place where he stored his illegal drugs for sale, analyzing the GPS data should allow police to determine where Defendant stopped before delivering drugs to individuals during his short visits to residences and parking lots. While the evidence at trial established Defendant did have a storage unit apart from his residence to which he traveled occasionally according to police surveillance, the reasonable inference arising from the movements of Defendant's vehicle was that he did not stop by that unit with any regularity, and in particular when traveling between his residence and other locations to which he was suspected of delivering drugs.

6

The four corners of the warrant affidavit establish the state judge had probable cause, that is, a substantial basis to believe a fair probability existed that evidence of Defendant's drug dealing might be found in his residence. *See Gates*, 462 U.S. at 238. And the facts to which Defendant points that were omitted from the affidavit do not change the equation. Defendant is incorrect when he claims these facts would have "significantly undermined" probable cause to search Defendant's residence. Aplt's Reply. Br. at 6. Quite apart from the lack of evidence that the affiant officer omitted material facts from the affidavit "knowingly and intentionally, or with reckless disregard for the truth" *Franks*, 438 U.S. at 155–56, Defendant has not shown that any of the omitted facts, while perhaps marginally relevant to the probable cause determination, were material, or, in other words, "so probative as to negate probable cause." *Stewart*, 915 F.2d at 582 n.13.

That officers did not believe Defendant was selling drugs directly out of his residence does nothing to counter the reasonable belief, established by the affidavit, that he was delivering drugs from his home to others in *their* homes and elsewhere. The probability of the latter, not the former, was the subject of the affidavit. Nor do officers' unsuccessful trash pulls from the community trash bins at Defendant's residential complex—pulls that yielded no evidence of any trash originating from Defendant or his residence—tell us anything other than Defendant might not have been disposing of his trash, whatever its contents, at that location. Finally, that Defendant had a storage unit during the relevant time period about which officers were aware does nothing to alter the fact that his pattern of activity during the period

7

officers conducted surveillance provided little if any indicia that Defendant was using a storage unit to store his drugs until immediately prior to sale. Accordingly, because the affidavit would still establish probable cause to search Defendant's residence for evidence of drug dealing even if the affidavit contained the omitted matters about which he now complains, the district court did not err by denying Defendant a *Franks* hearing on his motion to suppress.

II.

Defendant next argues that § 922(g)(3), which proscribes "an unlawful user of . . . any controlled substance" from possessing a firearm, is unconstitutionally vague as applied to the facts of his case. Defendant says the statute's failure to define a "user" of a controlled substance leaves the law unclear because it fails to provide reasonable notice to an ordinary person under the circumstances presented that he qualifies as a "user" within the meaning of § 922(g)(3). But while Defendant may be correct that his own testimony—he told the jury he had been clean for three to four months with a couple of relapses—was not necessarily inconsistent with the actual trial evidence, the jury, based on the entirety of the evidence, was entitled to draw contrary inferences therefrom—which it certainly did—about Defendant's drug use.

The jury's finding that Defendant was a "user" of a controlled substance under § 922(g)(3) during the relevant time period did not require the wholly subjective and arbitrary judgment necessary to render the statute unconstitutional as applied. *See United States v. Williams*, 553 U.S. 285, 305–06 (2008). This is so because federal courts of appeals, including this one, have uniformly given the term "user" a settled

8

legal meaning through a narrowing construction. *United States v. Morales-Lopez*, 92 F.4th 936, 945 (10th Cir.) (citing cases), *cert. denied*, 2024 WL 4427054 (2024). We have long held a defendant's "regular and ongoing use of . . . [illegal drugs] during the same time as his firearm possession qualifies him as an 'unlawful user of a controlled substance.'" *United States v. Bennett*, 329 F.3d 769, 778 (10th Cir. 2003) (internal brackets and ellipses omitted). Here, the district court instructed the jury that "[a]n 'unlawful user of a controlled substance' is an individual who, on a regular and ongoing basis, uses a controlled substance in a manner other than that prescribed by a licensed physician." In other words, to obtain a § 922(g)(3) conviction, the Government had to introduce sufficient evidence of a temporal nexus between Defendant's drug use and his firearm possession. *Morales-Lopez*, 92 F.4th at 945.

The Government introduced such evidence, albeit circumstantial. Throughout Defendant's residence, officers recovered a total of more than 300 grams of cocaine, more than 600 grams of methamphetamine in crystal and pill form, more than 58 grams of heroin, and more than a kilogram of marijuana. Officers also located multiple forms of drug paraphernalia including crack pipes, brillo, (used inside a crack pipe as a screen), scales, and baggies. In Defendant's bedroom, which was otherwise "tidy," officers located, among other things, a used crack pipe and an unloaded firearm underneath the bed. In dresser drawers, officers located another used crack pipe and baggies containing cocaine and other drugs. Officers also located three loaded semiautomatic handguns in the dresser near the bed. A suit jacket pocket located in the bedroom closet contained a large quantity of

9

methamphetamine pills.  In the kitchen, officers recovered two used crack pipes in plain view on the counter.  Also in the kitchen, officers found baggies of pills containing methamphetamine, other baggies containing small amounts of marijuana, and a digital scale with white residue.  In the oven, officers found cooking utensils with residue indicating crack cocaine preparation.  Two baggies located on top of a checkbook featuring Defendant's name and address contained pharmaceutical tablets and pills testing positive for fentanyl.

While the trial record contains no evidence of Defendant actually using drugs, we simply cannot ignore the reasonable inferences to be drawn from the *overwhelming* circumstantial evidence presented—inferences that could well lead a reasonable jury to conclude Defendant's drug use was regular and ongoing at the time he possessed firearms.  Though the Government did not introduce at trial direct evidence pinpointing precise dates on which Defendant used illegal drugs, it was not required to do so.  *See Morales-Lopez*, 92 F.4th at 945.  The circumstantial evidence the Government did introduce supports a reasonable inference that Defendant was a user of controlled substances during the relevant time period.  *Id.*  We need not belabor the point.  Section 922(g)(3)'s phrase "unlawful user of . . . any controlled substance" is clear in its application to Defendant's conduct.  The facts presented at trial, coupled with the reasonable inferences the jury was entitled to draw from those facts, support the conclusion that Defendant was an "unlawful user" of illegal drugs, one whose use was "regular and ongoing" while in possession of a firearm.

III.

Defendant also challenges for the first time on appeal the district court's admission of certain trial evidence bearing upon his § 924(c) conviction for possessing a firearm in relation to a drug trafficking offense. Specifically, Defendant argues an officer's testimony that two of the firearms recovered from his residence were stolen based on the officer's review of a law enforcement database violated both hearsay and best evidence rules. Defendant also argues Shaw's testimony that Shaw possessed firearms to protect his own stash of money and drugs was unduly prejudicial because such testimony was wholly irrelevant to whether Defendant possessed a firearm for the same purpose. *See Fed. R. Evid.* 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by . . . unfair prejudice . . . ."). Reviewing only for plain error, we bypass the questions of whether Defendant has pointed to an actual error that was plain or obvious, and, based on the trial record before us, conclude any error in the admission of the contested evidence did not affect Defendant's substantial rights.

To show an error affected his substantial rights, Defendant must establish a "reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Coulter*, 57 F.4th 1168, 1178 (10th Cir. 2023) (quoting *United States v. Bustamante-Conchas*, 850 F.3d 1130, 1138 (10th Cir. 2017) (en banc)). At trial, the Government introduced evidence that law enforcement recovered thirteen firearms from Defendant's residence. Four firearms were found in Defendant's bedroom along with loose pills, cocaine, and a used crack pipe. Officers

11

located three loaded firearms in the dresser drawer near the bed and a fourth unloaded firearm under the bed. Nine additional firearms and more illegal drugs and paraphernalia were found in the residence's basement. At trial, an officer testified two of the firearms recovered from a tote bag in the basement had been reported stolen according to a police database, but the officer did not know whether Defendant knew they were stolen. In its jury instructions, the district court listed several factors to assist the jury in determining whether Defendant's firearm possession was in furtherance of a drug trafficking crime in violation of § 924(c): (1) the type of criminal activity, (2) accessibility of the firearm, (3) whether the firearm was stolen, (4) whether the status of the possession was legitimate or illegal, (5) whether the firearm was loaded, and (6) the proximity of the firearm to drugs or drug profits.

Defendant tells us that because the jury was instructed to consider whether a firearm was stolen—one of six factors the jury was told to consider in addressing the § 924(c) charge—the erroneous admission of the evidence proffered to establish that two of the thirteen firearms were stolen likely swayed the jury's verdict. But the record evidence persuades us otherwise. Law enforcement collected *thirteen* firearms from Defendant's residence. Eleven of those firearms had not been reported stolen including seven of the nine firearms found in the basement. Two of those firearms were taken from the same tote bag as the stolen firearms, making them indistinguishable in their proximity to the illegal drugs found in the basement and their ability to protect Defendant's stash. Three loaded firearms were found in the bedroom's dresser drawer about two feet away from the bed in close proximity to a

12

used crack pipe as well as an assortment of drugs. Add to this $25,000 in cash located in the bedroom closet. Suffice to say that, considering the voluminous trial record in its entirety which we have painstakingly reviewed, Defendant has not shown a reasonable probability that the contested evidence affected the outcome of his § 924(c) charge.

Nor has Defendant shown a reasonable probability that Shaw's testimony regarding his own possession of firearms to protect his stash of drugs and money affected the outcome of the § 924(c) charge. Just prior to Shaw's testimony, a sergeant with the Wichita Police Department testified, absent objection, that drug users tend to possess firearms "for protection," and that drug dealers have even "more of a reason" to possess firearms because they possess large quantities of drugs and engage in deals involving "a lot more money." According to the sergeant: "So it's more common for dealers really to have access to firearms, especially in their homes, because we're running into a lot of home invasion robberies and burglaries targeting that money . . . that they know the individuals have inside, and also their drugs."

Undoubtedly, the use of Shaw's testimony regarding his possession of firearms to show Defendant's guilt by association or his propensity to commit a § 924(c) violation is impermissible. But Shaw's testimony certainly had some relevance. Such testimony was admissible to establish Defendant's motive for possessing a firearm. *See United States v. Montgomery*, 390 F.3d 1013, 1018 (7th Cir. 2004). Moreover, the sergeant's prior testimony based on his previous experience that drug

13

dealers have a strong motive for possessing firearms, namely to protect their drugs and cash proceeds, surely lessened any prejudicial impact of Shaw's testimony. *See United States v. Otuonye*, 995 F.3d 1191, 1207 (10th Cir. 2021) (observing that where wrongly admitted evidence is cumulative of other properly admitted evidence, the former is less likely to have "injuriously influenced" the jury's verdict). Indeed, if Defendant had objected, prompting the district court to offer a limiting instruction, little would be left for Defendant to argue regarding prejudicial impact. *See United States v. Abel*, 469 U.S. 45, 56 (1984) ("[T]here is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible."). Given the record before us, the risk of the jury convicting Defendant on the § 924(c) charge because of an "emotional response" of guilty by association was slight. We have recognized that a defendant, "facing 'overwhelming evidence of his guilt'" usually 'cannot establish a reasonable probability' that an alleged error 'affected the outcome of the trial,'" and this case is no different. *Coulter*, 57 F.4th at 1178 (quoting *United States v. Ibarra-Diaz*, 805 F.3d 908, 926 (10th Cir. 2015)).

## IV.

Defendant's final argument is that the district court plainly erred in ordering forfeiture of the $ 25,000 located in Defendant's residence during the search. On appeal, the Government concedes the evidence presented failed to establish the required nexus between the cash and *an offense of conviction*. *See Fed. R. Crim. P.* 32.2(b)(1)(A). At most, the Government says, the trial evidence showed the cash was

14

proceeds of *prior* drug transactions.  Accordingly, we shall vacate *only* that portion of the district court's judgment ordering forfeiture of the cash.

* * *

AFFIRMED IN PART and VACATED IN PART.

Entered for the Court

Bobby R. Baldock
Circuit Judge