**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 22 2003**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CLIFFORD RAY BENNETT,

      Defendant-Appellant.

No. 01-8101

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 01-CR-04-D)**

---

Lisa E. Leschuck (Matthew H. Mead, United States Attorney, with her on the brief), Assistant United States Attorney, Cheyenne, Wyoming, for Plaintiff-Appellee.

Ronald G. Pretty, Cheyenne, Wyoming, for Defendant-Appellant.

---

Before **EBEL,** Circuit Judge, **BRORBY**, Senior Circuit Judge, and **O'BRIEN**, Circuit Judge.

---

**BRORBY**, Senior Circuit Judge.

Mr. Clifford Ray Bennett entered a plea agreement with the government and conditionally pled guilty to possessing a firearm silencer in violation of

federal law. The United States District Court for the District of Wyoming sentenced him to thirty-seven months in prison. Mr. Bennett asserts two claims of error on appeal. He argues the district court should have suppressed statements he made about the firearm silencer because the police illegally arrested him and violated his right to silence under *Miranda v. Arizona*, 384 U.S. 436 (1966). He also argues the district court incorrectly determined he was a "prohibited person" under the United States Sentencing Guidelines, thereby increasing his sentence for possessing a firearm silencer. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2), we affirm.

**Background**

The police first encountered Mr. Bennett in his backyard while conducting a search of his residence pursuant to a search warrant. They were searching "for controlled substances, drug paraphernalia, weapons, money and other items associated with trafficking of narcotics." Although the police told Mr. Bennett "to stop, freeze, halt, police," Mr. Bennett ignored the orders and entered his garage. The police then ordered Mr. Bennett to exit the garage. He eventually complied, and the police instructed him to lie on the ground. At least two police officers pointed their guns at Mr. Bennett during this time. Once Mr. Bennett was lying on the ground, the police handcuffed him and searched him for weapons.

-2-

After failing to find any weapons in his possession, the police uncuffed Mr. Bennett and informed him they had a warrant to search his residence.

Following their search for weapons, the police advised Mr. Bennett of his rights under *Miranda* and expressed their desire to interview him. Mr. Bennett indicated he understood these rights. He also indicated he did not want to be interviewed at his residence, but he agreed to be interviewed at a local office of the Wyoming Division of Criminal Investigation. The police informed Mr. Bennett he was not under arrest, he did not have to answer questions, and he did not have to travel to the office to be interviewed. Nevertheless, Mr. Bennett agreed to accompany the officers.

The police interviewed Mr. Bennett about his drug dealing activities. Mr. Bennett admitted he used, purchased, and sold methamphetamine. The police terminated the interview and returned Mr. Bennett to his residence after he "refused to answer further questions about sources, stating that he was not going to be a 'rat' and that he would just take the consequences and go to the pen."

Once the police returned Mr. Bennett to his residence, an officer who was participating in the search approached him and asked him about a firearm silencer

the officer discovered in Mr. Bennett's garage. Mr. Bennett told the officer a friend's father made the item for Mr. Bennett's .308 Remington rifle. Mr. Bennett refused to identify the name of his friend's father. He told the officer: "I don't want to talk about it anymore unless I get a deal." The officer ceased questioning Mr. Bennett. A short time later, the police arrested Mr. Bennett for delivery of a controlled substance. Mr. Bennett eventually pled guilty in a separate matter to two misdemeanor charges of possession of a controlled substance.

A grand jury later indicted Mr. Bennett for possessing a firearm silencer in violation of 26 U.S.C. §§ 5841, 5845, 5861(d), and 5871. Before trial, Mr. Bennett filed a motion to suppress statements he made about the firearm silencer. The district court denied the motion. Mr. Bennett then entered a plea agreement with the government and conditionally pled guilty to the charge in the indictment. He reserved the right to contest the admissibility of his statements about the firearm silencer on appeal. The district court sentenced him to thirty-seven months in prison. Mr. Bennett now appeals the district court's denial of his motion to suppress as well as his sentence.

**The Fourth Amendment and *Miranda***

Mr. Bennett argues the district court incorrectly denied his motion to suppress the statements he made about the firearm silencer. He claims the statements should be suppressed because the police illegally arrested him when they "ordered him to [lie] on the ground." He also claims the statements should be suppressed because the police violated his right to silence under *Miranda*. We conclude the district court did not err in denying the motion.

The Fourth Amendment of the Constitution protects people from "unreasonable searches and seizures." U.S. Const. amend. IV. Absent certain exceptions not relevant here, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974); *see also United States v. Eylicio-Montoya*, 70 F.3d 1158, 1165 (10th Cir. 1995) (detailing exceptions to the remedy of suppression for Fourth Amendment violations). "When reviewing a district court's grant or denial of a motion to suppress [such evidence], we accept the court's findings of fact unless clearly erroneous and consider the evidence in the light most favorable to the government." *United States v. Pena*, 143 F.3d 1363, 1365 (10th Cir.), *cert. denied*, 525 U.S. 903 (1998). "We are mindful that at a hearing on a motion to

suppress, the credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge." *United States v. Fernandez*, 18 F.3d 874, 876 (10th Cir. 1994). Nevertheless, we review de novo the ultimate determination of reasonableness under the Fourth Amendment because it is a question of law. *United States v. Gordon*, 168 F.3d 1222, 1225 (10th Cir.), *cert. denied*, 527 U.S. 1030 (1999).

Mr. Bennett apparently believes the police transformed his detention into an illegal arrest when they "ordered him to [lie] on the ground" and "pointed a gun at him." The district court held these actions did not amount to an arrest and the police acted reasonably in using firearms and handcuffs to detain Mr. Bennett. Mr. Bennett believes the police violated his Fourth Amendment rights and, consequently, the district court should have suppressed his subsequent statements. We agree with the district court.

As an initial matter, we reject Mr. Bennett's characterization of his initial detention as an "arrest." We also conclude the police officers acted reasonably in securing Mr. Bennett before searching the premises. The officers had a warrant

-6-

to search Mr. Bennett's premises for drugs and drug-related paraphernalia.[1]  "[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."  *Michigan v. Summers*, 452 U.S. 692, 705 (1981) (footnotes omitted).  However, police officers must still act reasonably because such a detention is a seizure under the Fourth Amendment.  *Id*. & n.4.

In this case, the police officers' conduct was not unreasonable simply because they pointed a gun at Mr. Bennett and handcuffed him.  Police may use firearms and handcuffs as part of a permissible detention when they reasonably believe it is necessary for their safety and protection.  *See United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir. 1993).  Here, the government received a tip from a confidential informant that Mr. Bennett was dealing drugs and carrying a firearm.  A state court judge determined probable cause existed to search Mr. Bennett's home for illegal drugs and drug-related paraphernalia.  Mr. Bennett initially disobeyed police orders to "stop" and entered his garage.  The police were unaware of Mr. Bennett's activity in the garage.  Once Mr. Bennett emerged from the garage, the police acted reasonably in minimizing the risk of harm to

---

[1]  Mr. Bennett does not challenge the validity of the warrant.

themselves and others by securing Mr. Bennett to determine if he had any weapons. Their use of firearms and handcuffs did not transform Mr. Bennett's detention into an arrest.

We also conclude Mr. Bennett's detention did not become an arrest while the police questioned him about his drug-related activities and the firearm silencer. The police did not restrain Mr. Bennett once they determined he did not possess any weapons. They told him he was not under arrest and he did not have to answer questions. Mr. Bennett agreed to talk with the police. Although the police told him he did not need to accompany them to a nearby Wyoming Division of Criminal Investigation office for questioning, he agreed to accompany them. Mr. Bennett rode to the office in the front seat of a police car. When Mr. Bennett indicated he did not want to answer further questions at the office, the police returned him to his home. The police did not question him about the firearm silencer until after they dropped him off at his residence. Mr. Bennett willingly talked to the police about the firearm silencer because he did not think his conduct was illegal. After reviewing this evidence, we believe the police acted reasonably and Mr. Bennett's detention did not become an arrest.

Mr. Bennett next argues the district court should have suppressed his

statements about the silencer because the police improperly questioned him about the firearm silencer after he invoked his right to silence under *Miranda*. Assuming *Miranda* applied, the district court held the police did not violate *Miranda* because they gave Mr. Bennett proper warnings after they searched him for weapons. The court held the police did not need to re-administer *Miranda* warnings prior to questioning Mr. Bennett about the firearm silencer. We conclude *Miranda* does not apply to the facts of this case. We therefore do not decide whether Mr. Bennett invoked his right to silence under *Miranda* or whether the police should have re-administered *Miranda* warnings.

"[T]wo requirements must be met before *Miranda* is applicable; the suspect must be 'in custody,' and the questioning must meet the legal definition of 'interrogation.'" *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993). We dispose of Mr. Bennett's *Miranda* claim on the first requirement alone. An individual is not "in custody" for purposes of *Miranda* unless his "freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (quotation marks and citation omitted).

We reaffirm our prior analysis concluding the police did not arrest Mr. Bennett prior to his statements about the silencer. For substantially the same

reasons, we conclude Mr. Bennett was not "in custody" for purposes of *Miranda*.

His freedom of action was not "curtailed to a degree associated with formal

arrest" during questioning.

The present case is easily distinguishable from other instances where we

concluded an individual was "in custody" for purposes of *Miranda*. For example,

in *United States v. Perdue*, 8 F.3d at 1464-65, we held the defendant was "in

custody" when the police used, among other things, firearms to restrain him

*during* questioning.[2] The police in *Perdue* did not tell the individual he was free

to leave. In fact, the police officers questioned the defendant at gun point while

he was lying face down on the ground. *Id*. at 1464. The officers also held the

defendant's pregnant fiancee at gunpoint. *Id.* Police helicopters hovered

overhead. *Id*. These coercive factors were not present during the questioning of

Mr. Bennett. Instead, police did not restrain Mr. Bennett while questioning him

and even told him he was not under arrest.[3] We therefore conclude Mr. Bennett

---

[2] The police also may have used physical force and handcuffs. *Id.* at 1464.

[3] Although not controlling, we find persuasive the reasoning of *United States v. Peck*, No. 97-8122, 1999 WL 33022 (10th Cir. Jan. 27, 1999) (unpublished), *cert. denied*, 526 U.S. 1152 (1999). *See* 10th Cir. R. 36.3(B). The court in *Peck* concluded *Miranda* did not apply where the police initially used firearms and handcuffs to restrain an individual but told him he was not under arrest and freed him of any restraint during questioning. *See Peck*, 1999 WL 33022, at *4.

was not "in custody" for purposes of *Miranda*, and, as a result, the police did not violate *Miranda* in asking Mr. Bennett about the firearm silencer.

**"Prohibited Person" under the Sentencing Guidelines**

Prior to Mr. Bennett's sentencing, a probation officer prepared a pre-sentence investigation report. In the report, the probation officer recommended setting Mr. Bennett's base offense level at twenty pursuant to the United States Sentencing Guidelines. *See* United States Sentencing Guidelines Manual § 2K2.1(a)(4)(B) (2001). The probation officer recommended this base offense level upon concluding Mr. Bennett was an "unlawful user of, or [was] addicted to, a[] controlled substance," making him a "prohibited person" under the sentencing guidelines. *See id*., § 2K2.1(a)(4)(B), cmt. n.6; 18 U.S.C. § 922(g)(3). Mr. Bennett objected to the probation officer's recommendation and claimed he was not a "prohibited person." After reviewing the evidence, the district court held Mr. Bennett was a "prohibited person" and overruled his objection. Mr. Bennett argues on appeal the district court erred in this determination.

"In reviewing the district court's application of the sentencing guidelines to the facts, we review legal questions de novo and factual determinations for clear

error." *United States v. Solomon*, 95 F.3d 33, 35 (10th Cir. 1996). We view the "[e]vidence underlying a district court's sentence ..., and inferences drawn therefrom, in the light most favorable to the district court's determination." *United States v. Conley*, 131 F.3d 1387, 1389 (10th Cir. 1997), *cert. denied*, 523 U.S. 1087 (1998).

The sentencing guidelines set a base offense level of twenty if "the offense involved a firearm described in 26 U.S.C. § 5845(a)" and "the defendant was ... a prohibited person at the time [he] ... committed the instant offense." U.S.S.G. § 2K2.1(a)(4)(B). Mr. Bennett does not dispute his offense involved a firearm listed in 26 U.S.C. § 5845(a). Instead, he argues he was not a "prohibited person" when he committed the offense because he was not an "addict."

The sentencing guidelines define a "prohibited person" in relevant part as a person "who is an unlawful user of or addicted to any controlled substance" under 18 U.S.C. § 922(g)(3). *See* U.S.S.G. § 2K2.1, cmt. n. 6. The statute does not define the phrases "unlawful user of ... any controlled substance" or "addicted to any controlled substance." It does, however, define "addict" as an "individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have

lost the power of self-control with reference to his addiction." 21 U.S.C. § 802(1).

Mr. Bennett believes the district court erred in not defining the language "unlawful user of ... any controlled substance" the same as "addicted to any controlled substance." He argues he is not an "addict," as defined under 21 U.S.C. § 802(1), because he used methamphetamine and marijuana rather than narcotic drugs. Mr. Bennett's argument presupposes the definition of the word "addict" under 21 U.S.C. § 802(1) is synonymous with the phrase "addicted to any controlled substance" under 18 U.S.C. § 922(g)(3). We need not consider whether this presumption is correct because we conclude, whatever the precise meaning of the phrase "addicted to any controlled substance," its meaning is distinct from the meaning of the phrase "unlawful user of ... any controlled substance." The words "unlawful user of or addicted to any controlled substance" are written in the disjunctive, implying each has a separate meaning. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Cannons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise; here it does not."). Even Mr. Bennett agrees the statute "breaks down a prohibited person into two groups: a. User, or b. Addicted." We therefore conclude the district court did not err in defining the

phrase "unlawful user of ... any controlled substance" differently from the phrase "addicted to any controlled substance."

In a related argument, Mr. Bennett argues he is not a "prohibited person" because he passed all drug tests while on bond. He claims this evidence demonstrates he was not an "addict" because "he definitely didn't lose the power of self-control." We have already concluded the phrase "addicted to any controlled substance" is distinct in meaning from the phrase "unlawful user of ... any controlled substance." The government only argues that Mr. Bennett was an unlawful user of a controlled substance. In any event, although Mr. Bennett did not fail any drug tests while on bond, we conclude the district court properly held him to be a "prohibited person."

The guidelines do not require a person to be an unlawful user of a controlled substance while on bond in order to qualify as a prohibited person. An individual's status as a prohibited person is measured "at the time the defendant committed the instant offense." U.S.S.G. § 2K2.1(a)(4)(B). While a court may use evidence of a defendant's unlawful use of drugs while on bond to infer he was a user at the time he possessed a firearm, *see Solomon*, 95 F.3d at 35, such evidence is not necessary. The government need only show the defendant was an

unlawful user of drugs or addicted to drugs at the time he committed the offense. *See* U.S.S.G. § 2K2.1(a)(4)(B); 18 U.S.C. § 922(g)(3). In other words, the government must show a defendant's drug use was contemporaneous with his firearm possession.[4] After reviewing the evidence, discussed in detail below, we are convinced the government met its burden in this case.

As mentioned previously, the government believes Mr. Bennett's extensive drug history qualifies him as an "unlawful user" of a controlled substance. Mr. Bennett does not dispute he used controlled substances.[5] Instead, he argues the sentencing guidelines are unconstitutionally vague because the phrase "unlawful user" in 18 U.S.C. § 922(g)(3), adopted by the guidelines in U.S.S.G. § 2K2.1, cmt. n.6, "is capable of being understood by reasonably well-informed persons in

---

[4] Although a defendant's drug use must be contemporaneous with firearm possession, there is no need for a defendant's drug use to be "simultaneous[]" with firearm possession. *See Solomon*, 95 F.3d at 35. The government does not need to show the defendant was under the influence of an illegal drug at the exact same time he possessed a firearm. *Id*.

[5] The record indicates Mr. Bennett used methamphetamine and marijuana regularly, both of which are defined as controlled substances under federal law. *See* 21 U.S.C. §§ 802(6), 812 (c), schedules I(c)(10), III(a)(3). Except for limited circumstances not present here, the mere possession of these substances is illegal. *See* 21 U.S.C. § 844(a).

two or more different ways."[6]

A criminal provision "must explicitly convey what it outlaws." *Solomon*, 95 F.3d at 34. A provision that "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.'" *Id*. at 34-35 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). Where, as here, a vagueness challenge does not involve First Amendment freedoms, we examine whether the provision is impermissibly vague "in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550 (1975). We conclude the sentencing guidelines are not unconstitutionally vague as applied to Mr. Bennett's conduct.

---

[6] We note there is a conflict among the circuits as to whether the sentencing guidelines may be challenged on vagueness grounds. *Compare United States v. Brierton*, 165 F.3d 1133, 1139 (7th Cir. 1999); *United States v. Salas*, No. 93-5897, 1994 WL 24982, at *2 (6th Cir. 1994) (unpublished disposition); and *United States v. Wivell*, 893 F.2d 156, 160 (8th Cir. 1990), *with United States v. Johnson*, 130 F.3d 1352, 1354 (9th Cir. 1997). Our circuit has not yet decided the question, *see United States v. Negri*, No. 98-6178, 1999 WL 157423, at *5 (10th Cir. 1999) (unpublished disposition), and we decline to do so here because neither party has raised the issue. For the purposes of this case, we therefore assume without deciding that a vagueness challenge to the guidelines is appropriate.

A confidential informant told police Mr. Bennett was distributing methamphetamine. Upon searching Mr. Bennett's residence, the police found "a digital scale with white powder residue, [a] small baggie of suspected marijuana, numerous marijuana pipes and bongs, possible drug ledgers, assorted small containers containing white powder residue, small plastic bindles, and suspected marijuana seeds." The police also found a small amount of marijuana on Mr. Bennett's person. Mr. Bennett admitted during an interview with police he used, purchased, and sold methamphetamine. Mr. Bennett also admitted to a probation officer he used marijuana and methamphetamine on a daily basis up until his arrest. As a result of the police investigation, Mr. Bennett pled guilty to two misdemeanor charges of possession of a controlled substance, *i.e.*, marijuana and methamphetamine.

Based on this evidence, we conclude the district court correctly found Mr. Bennett was a "prohibited person" under the guidelines. His regular and ongoing use of marijuana and methamphetamine during the same time period as his firearm possession qualifies him as a "unlawful user of ... a[] controlled substance" and therefore a "prohibited person." The guidelines are not vague

under the facts of this case.[7]

Mr. Bennett also suggests the district court erred in setting his base offense level at twenty (instead of eighteen) because the government did not assert he was a "prohibited person" in the indictment. Mr. Bennett claims this two-level increase in the base offense level, which increased the mandatory minimum sentence for his offense, "hit [him] from left field." We generously assume Mr. Bennett is arguing his Fifth and Sixth Amendment rights were violated under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). We nevertheless reject his argument.

The Supreme Court in *Apprendi* held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

---

[7] Mr. Bennett also argues for the first time in his reply brief that the phrase "unlawful user" in § 922(g)(3), adopted by the guidelines in U.S.S.G. § 2K2.1, cmt. n.6, violates the Commerce Clause and the Tenth Amendment under *United States v. Lopez*, 514 U.S. 549 (1995). He claims this was the thrust of his argument in his opening brief and faults the government for failing to address his argument. After carefully reviewing Mr. Bennett's opening brief, we do not find any mention of the Commerce Clause, the Tenth Amendment, or *Lopez*. We need not address arguments raised for the first time in a reply brief, *see Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000), and we decline to do so now.

doubt." *Id.* at 490. *Apprendi* is not implicated, however, where judges find facts increasing the mandatory minimum sentence below the maximum sentence for the crime committed. *See Harris v. United States*, 536 U.S. 545, 565, 569-70 (2002); *United States v. Sullivan*, 255 F.3d 1256, 1265 (10th Cir. 2001), *cert. denied*, 534 U.S. 1166 (2002). "[F]acts guiding judicial discretion below the statutory maximum need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt." *Harris*, 536 U.S. at 565, 569-70. *See also McMillan v. Pennsylvania,* 477 U.S. 79, 91-93 (1986); *United States v. Frederick*, 897 F.2d 490, 493 (10th Cir. 1990).

In this case, Mr. Bennett pled guilty to possessing a "firearm silencer in violation of 26 U.S.C. §§ 5841, 5845, 5861(d), and 5871." Based on its finding that Mr. Bennett was a "prohibited person," the district court sentenced him to the mandatory minimum of thirty-seven months in prison. This sentence is well below the ten-year statutory maximum for the offense. *See* 26 U.S.C. § 5871. Consequently, we conclude Mr. Bennett's Fifth and Sixth Amendment rights were not violated under *Apprendi*. *See Sullivan*, 255 F.3d at 1265. As discussed above, the government does not need to allege facts in the indictment used only to increase the mandatory minimum sentence for an offense.

**Conclusion**

In sum, we conclude the district court correctly denied Mr. Bennett's motion to suppress because the police did not violate the Fourth Amendment or *Miranda* in detaining and questioning Mr. Bennett. We also conclude the district court correctly determined Mr. Bennett was a "prohibited person" under the sentencing guidelines. We therefore **AFFIRM** the district court.