FILED
**United States Court of Appeals
Tenth Circuit**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**August 20, 2025**

**Christopher M. Wolpert
Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KYLE DAVEY,

    Defendant - Appellant.

No. 24-3132

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:23-CR-20006-DDC-1)**
_____

Daniel T. Hansmeier, Appellate Chief, Office of the Federal Public Defender, Kansas City, Kansas (Melody Brannon, Federal Public Defender, with him on the briefs), for Defendant-Appellant.

Bryan C. Clark, Assistant United States Attorney, Office of the United States Attorney, Kansas City, Kansas (Duston J. Slinkard, United States Attorney, and James A. Brown, Assistant United States Attorney, with him on the brief), for Plaintiff-Appellee.

_____

Before **MATHESON**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

    Following his unsuccessful motion to dismiss, Defendant-Appellant Kyle Davey pleaded guilty to being an "unlawful user" of a controlled substance (heroin) in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3). Mr. Davey concedes

he used heroin daily while knowingly possessing firearms. Yet Mr. Davey argues he is not an "*unlawful* user" under the statute because, while there is a law prohibiting his *possession* of heroin—21 U.S.C. § 844(a)—there is no federal or state law explicitly prohibiting his *use* of heroin.

Because a person cannot use a controlled substance without possessing it, and because there is no lawful use of heroin relevant here, Mr. Davey's use was unlawful.[1] Exercising jurisdiction under 28 U.S.C. § 1291, we thus affirm Mr. Davey's § 922(g)(3) conviction.

## I.   BACKGROUND

### A.   Facts

In 2021, officers with the Shawnee and Lenexa Police Departments executed a search warrant at Mr. Davey's residence in Shawnee, Kansas. The warrant related to an ongoing investigation into the theft of heavy construction equipment. At Mr. Davey's residence, the officers found five grams of suspected methamphetamine, forty-four firearms (including two machine guns), and ammunition. The officers arrested Mr. Davey on the scene. When they searched Mr. Davey incident to the arrest, they found 2.1 grams of heroin on his person. After waiving his *Miranda*

---

[1] Use is permitted "only for Government-approved research projects." *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 490 (2001); 21 U.S.C. § 823(g)(2)(A) (providing procedures for "applications by practitioners wishing to conduct research with controlled substances in schedule I"). Because there is no suggestion that this exception is relevant here, we do not discuss it further.

rights, Mr. Davey provided a statement to the officers, admitting to "being a daily user of heroin." ROA Vol. I at 156.

## B.    *Procedural History*

A federal grand jury in the District of Kansas indicted Mr. Davey for possessing a machine gun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2) ("Count 1"), and for possessing a firearm as an "unlawful user" of a controlled substance, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2) ("Count 2").

Mr. Davey moved to dismiss Count 2 for failure to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). Among other grounds,[2] he argued that "as a matter of law" he was not an "unlawful user" because "[u]sing a controlled substance is not illegal under [f]ederal or Kansas state law." *Id.* at 17. Specifically, he argued that the Controlled Substances Act ("CSA") renders it unlawful to *possess*—not *use*—a controlled substance without a valid prescription because "one can unlawfully possess a controlled substance under [21 U.S.C.] § 841, but not use it." *Id*. at 26. And according to Mr. Davey, as a

---

[2] Mr. Davey raised three other grounds to dismiss Count 2: that 18 U.S.C. § 922(g)(3) on its face violates the Second Amendment; is unconstitutionally vague; and violates the Commerce Clause. The district court rejected each argument. Because Mr. Davey does not raise any of these arguments in his opening brief, we do not consider them. *See Burke v. Regalado*, 935 F.3d 960, 1014 (10th Cir. 2019) ("Issues not raised in the opening brief are deemed abandoned or waived." (quotation marks omitted)).

matter of statutory interpretation, reading § 922(g)(3) to criminalize being a "user" renders the word "unlawful" "mere surplusage." *Id*. at 25.

The Government responded that "it is impossible to use a controlled substance without possessing it," so § 841(a) necessarily prohibits use of a controlled substance without "a valid prescription or order." *Id*. at 79–80 (quoting 21 U.S.C. § 844(a)). In accord with this understanding, the Government argued the Tenth Circuit has "supplied common-sense parameters for what 'unlawful user' means," as exemplified by our decision in *United States v. Bennett*, 329 F.3d 769 (10th Cir. 2003). *Id.* at 78. There, we explained that the defendant's "regular and ongoing use of marijuana and methamphetamine during the same time period as his firearm possession qualifies him as a[n] 'unlawful user of . . . a [] controlled substance.'" *Bennett*, 329 F.3d at 778 (quoting 18 U.S.C. § 922(g)(3)). Because Mr. Davey "admitted to using heroin on a daily basis," the Government concluded he "unquestionably" qualified as an "unlawful user" of a controlled substance. ROA Vol. I at 78–79.

The district court, agreeing with the Government's position, denied Mr. Davey's motion to dismiss Count 2. It could not "see how an individual could use a controlled substance without possessing it" because "possession *precedes* use." *Id*. at 138–39. Applying caselaw discussing a different statute, 18 U.S.C. § 3583(g)—which prohibits defendants on supervised release from possessing controlled substances—the district court concluded that the Tenth Circuit has previously held that "a person cannot use a drug without possessing it." *Id*. at 138 (quoting *United States v. Hammonds*, 370 F.3d 1032, 1035 (10th Cir. 2004)). Because the district court concluded that Mr. Davey's

4

heroin use qualified him as an "unlawful user" under § 922(g)(3), it rejected Mr. Davey's claim that Count 2 failed to state an offense.

Mr. Davey subsequently pleaded guilty to both counts under a plea agreement, preserving the right to appeal the denial of his motion to dismiss. The district court imposed 78-month concurrent prison sentences on both counts, to be followed by three years of supervised release. This timely appeal followed.

## II.    STANDARD OF REVIEW

"Although we generally review the district court's denial of a motion to dismiss an indictment for an abuse of discretion," Mr. Davey's statutory interpretation argument that he is not an "unlawful user" "presents a question of law that we review de novo." *See United States v. Pauler*, 857 F.3d 1073, 1075 (10th Cir. 2017).

## III.    ANALYSIS

Mr. Davey's sole argument on appeal is that he cannot qualify as an "*unlawful user*" of a controlled substance under § 922(g)(3) because no applicable federal law or Kansas state law specifically criminalizes his use of heroin. We disagree. We first analyze the plain text meaning of the statutory term "unlawful user," and conclude the term covers persons who regularly use a controlled substance that has no lawful use. We then conclude that drug use necessarily encompasses drug possession, as is embedded in our caselaw in other contexts.

### A.    Statutory Background

Section 922(g)(3) makes it "unlawful" for any person who is

> an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802)) . . . to . . . possess . . . any firearm or ammunition . . . which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(3). As both parties agree, Congress has not defined the phrase "unlawful user." The Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") has defined the term "unlawful user" in § 922(g)(3), in relevant part, as "any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician." 27 C.F.R. § 478.11.

As cross-referenced in § 922(g)(3), the CSA's term "controlled substance" "means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6); *see id*. § 812 (schedules of controlled substances). Notably, "[m]ost of those substances—those listed in Schedules II through V—'have a useful and legitimate medical purpose and are necessary to maintain the health and general welfare of the American people.'" *Gonzales v. Raich*, 545 U.S. 1, 24 (2005) (quoting 21 U.S.C. § 801(1)). And the CSA's "regulatory scheme is designed to foster the beneficial use of those medications, [and] to prevent their misuse." *Id*.

Schedule I drugs, on the other hand, "are categorized as such because of their high potential for abuse, lack of any accepted medical use, and absence of any accepted safety for use in medically supervised treatment." *Id.* at 14; *see* 21 U.S.C. § 812(b)(1). The CSA "prohibit[s] entirely the possession or use of substances listed in Schedule I."

6

*Raich*, 545 U.S. at 24. One of Congress's motivations in prohibiting the possession of Schedule I substances was the "substantial and detrimental effect on the health and general welfare of the American people" caused by the "illegal . . . possession and improper use of controlled substances." *Id*. at 12 n.20 (quoting 21 U.S.C. § 801(2)).

Heroin, the drug Mr. Davey admitted using, is classified as a Schedule I substance. *See* 21 U.S.C. § 812(c)(Schedule I)(b)(10). This categorization renders its manufacture, distribution, or possession a criminal offense. *Id*. §§ 841(a)(1), 844(a). Specifically, 21 U.S.C. § 844(a) makes it "unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice." Because heroin is a Schedule I drug, it is "a substance that has no legal use by laymen . . . . The use of heroin by laymen is not permissible in any circumstance." *United States v. Ocegueda*, 564 F.2d 1363, 1365 (9th Cir. 1977); *see also Raich*, 545 U.S. at 24.

But controlled substances listed in Schedules II through IV can be "lawfully obtained," possessed, and used, so long as they are provided directly to an "ultimate user" by a medical practitioner or dispensed pursuant to a prescription. 21 U.S.C. §§ 829(a), (b), 802(27) (defining "ultimate user" as "a person who has lawfully obtained, and who possesses, a controlled substance for his own use or for the use of a member of his household"). And Schedule V substances need not be distributed by prescription, but they need to be dispensed "for a medical purpose." *Id*. § 829(c). Therefore, under the CSA the "manufacture, distribut[ion], dispensat[ion], [and] possess[ion of] any controlled

substance" is "*unlawful . . .* except in a manner authorized by the CSA." *Raich*, 545 U.S. at 13 (emphasis added).

### B.    Textual Analysis of "Unlawful User"

### 1.    Our Caselaw

This court has not yet directly analyzed the meaning of "unlawful" in § 922(g)(3)'s "unlawful user" context.[3] We have, however, given the term "user" a "settled legal meaning through a narrowing construction." *United States v. Moss*, No. 22-3101, 2024 WL 4541738, at *4 (10th Cir. Oct. 22, 2024) (unpublished), *cert. denied*, 145 S. Ct. 1461 (2025).[4]

---

[3] The parties disagree as to whether there is controlling precedent on this point, specifically, whether *United States v. Bennett*, 329 F.3d 769 (10th Cir. 2003), forecloses the question. In *Bennett*, we held that the defendant's "regular and ongoing use of marijuana and methamphetamine during the same time period as his firearm possession qualifie[d] him as a[n] 'unlawful user of . . . a [] controlled substance'" under § 922(g)(3). *Id*. at 778. We reasoned that regular use met the legal standard of "unlawful user" because "the mere possession of these substances is illegal." *Id*. at 777 & n.5 (citing 21 U.S.C. § 844(a)). Thus, *Bennett* supports the Government's proposition that someone unlawfully uses a drug when he unlawfully possesses the drug. But the *Bennett* court conducted no textual analysis of the phrase. *See id.* Instead, it "implicitly resolve[d] this issue" of whether the prohibition on Schedule I drug possession prohibits Schedule I drug use. *Modoc Lassen Indian Hous. Auth. v. U.S. Dep't of Hous. & Urb. Dev.*, 881 F.3d 1181, 1191 (10th Cir. 2017) (internal quotation marks omitted). Accordingly, although we find the parallels between *Bennett* and this case sound, we conduct our own statutory analysis here. *See id.* ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925))).

[4] We cite unpublished cases for their persuasive value only and do not treat them as binding authority. *See United States v. Ellis*, 23 F.4th 1228, 1238 n.6 (10th Cir. 2022).

Our court, along with other federal appeals courts, has required that the government "introduce[] sufficient evidence of a temporal nexus between the [regular] drug use and firearm possession" to sustain a § 922(g)(3) conviction. *United States v. Morales-Lopez*, 92 F.4th 936, 945 (10th Cir. 2024), *cert. denied*, 145 S. Ct. 241 (2024) (quotation marks omitted); *see, e.g.*, *United States v. Tanco-Baez*, 942 F.3d 7, 15 (1st Cir. 2019); *United States v. Bowens*, 938 F.3d 790, 793 (6th Cir. 2019); *United States v. Cook*, 970 F.3d 866, 877 (7th Cir. 2020); *United States v. Purdy*, 264 F.3d 809, 812 (9th Cir. 2001). This "judicially[] created temporal nexus," *United States v. Carnes*, 22 F.4th 743, 748 (8th Cir. 2022), "eliminate[s] the risk that § 922(g)(3) could be vague in its application," *Morales-Lopez*, 92 F.4th at 945. We have thus long held that a "user" under § 922(g)(3) is someone who, on a "regular and ongoing" basis, uses a controlled substance "during the same time period as his firearm possession." *Bennett*, 329 F.3d at 778.

The question before us today concerns the meaning of "unlawful" as a modifier to "user" in § 922(g)(3)'s phrase "unlawful user." In interpreting that term, "[w]e begin where all such inquiries must begin: with the language of the statute itself." *Republic of Sudan v. Harrison*, 587 U.S. 1, 8 (2019) (quoting *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 412 (2012) (internal quotation marks omitted)). Because Congress has not defined the phrase "unlawful user," its "ordinary or natural meaning" controls. *HollyFrontier Cheyenne Ref., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 388 (2021) (quoting *FDIC v. Meyer*, 510 U.S. 471, 476 (1994)). We choose "the most natural [or ordinary] reading" of the term

9

even if there are other "plausible reading[s] of the statutory text." *Republic of Sudan*, 587 U.S. at 8; *see also Maslenjak v. United States*, 582 U.S. 335, 343 (2017). We also consider how "important terms in the statute . . . relate to each other" to determine "[t]he plain meaning of the statutory text," *Babb v. Wilkie*, 589 U.S. 399, 404 (2020), because "[s]tatutory language 'cannot be construed in a vacuum,'" *Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) (quoting *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012)). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Id.*

## 2.    Definition of "Unlawful User"

Mr. Davey contends that an "unlawful user" is "an individual who uses drugs 'contrary to' or 'unauthorized by law.'" Appellant's Br. at 12. True enough. But we cannot agree with his constrained interpretation of "contrary to law." Mr. Davey maintains that a "user of [an] unlawful controlled substance" is not an "unlawful user" because "unlawful" does not modify "controlled substance" within § 922(g)(3), so whether the "substance is itself considered 'unlawful'" is irrelevant. *Id*. For the reasons we discuss below, we reject this interpretation as implausible.

We begin with where we agree with Mr. Davey's grammatical and syntactic analysis of the term. Mr. Davey is correct in asserting that "[§] 922(g)(3) plainly reaches a discrete class of individuals," that is, "individuals who use or take drugs." *Id*. at 11; *see User*, Random House Unabridged Dictionary (2d ed. 1993) (defining "user" as, among other things, "one who uses drugs, esp. as an abuser or addict"). And he is also correct in

10

explaining that "unlawful" as an adjective that modifies the noun "user" selects unlawful drug users as the subset of drug users who cannot possess firearms. This is because "[a]djectives modify nouns—they pick out a subset of a category that possesses a certain quality." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 19 (2018).

As Mr. Davey argues and we agree, the ordinary meaning of "unlawful" is "contrary to law or unauthorized by law." *Unlawful*, Black's Law Dictionary 1705 (rev. 4th ed. 1968). As Mr. Davey recognizes, "'unlawful' has a broader reach" than the words "illegal" and "criminal" because it "includes non-criminal laws and violations." Appellant's Br. at 18. The definition of "unlawful" is a matter of common knowledge. *See United States v. Williamson*, 746 F.3d 987, 991 (10th Cir. 2014). This analysis leads Mr. Davey to conclude that "[i]n ordinary terms" "an 'unlawful' drug user is an individual who uses drugs unlawfully—*i.e.*, an individual who uses drugs 'contrary to' or 'unauthorized by law.'" Appellant's Br. at 12. We agree this is the ordinary meaning of the term "unlawful user."

3.    **Legality of the Controlled Substance**

We depart from Mr. Davey's reasoning, however, when he asserts that unlawful conduct in § 922(g)(3) is unmoored from "whether [the] controlled substance is itself considered 'unlawful.'" *Id.* According to Mr. Davey, this is true "because 'unlawful' modifies 'user,' not 'controlled substance.'" *Id.* And on this basis, he concludes that § 922(g)(3)'s prohibition is triggered only if the user is part of a group of persons prohibited "from using controlled substances," Reply Br. at 1, "regardless [of] whether

11

that controlled substance is itself considered 'unlawful,'" Appellant's Br. at 12. We disagree.

Applying Mr. Davey's interpretation, if a person is in a group prohibited from using controlled substances, and the law criminalizing that group's use fails to distinguish drugs based on the CSA's classifications, the person would be prohibited from all use of controlled substances. But "[m]ost of [the] substances" regulated by the CSA "'have a useful and legitimate medical purpose and are necessary to maintain [a person's] health,'" and one purpose of the CSA is to "foster the beneficial use of those medications." *Raich*, 545 U.S. at 24 (citing 21 U.S.C. § 801(1)). Mr. Davey's interpretation would in effect criminalize the use of legitimate substances for a certain class of users, regardless of whether the drug was "lawfully obtained" for an "accepted medical use in treatment." 21 U.S.C. § 812(b)(5); 21 U.S.C. § 802(27) (defining an "ultimate user" as "a person who has *lawfully* obtained, and who possesses, a controlled substance") (emphasis added); 21 U.S.C. § 829(a)-(b) (describing the requirements for prescribing or dispensing controlled substances on Schedules II through V). This turns the CSA on its head.

Congress carefully grouped "all controlled substances . . . based on their accepted medical uses, the potential for abuse, and their psychological and physical effects on the body." *Raich*, 545 U.S. at 13–14 (citing 21 U.S.C. §§ 811, 812). Mr. Davey's reading of § 922(g)(3) would obliterate that detailed hierarchy to view lawfulness as contingent on who the user is, not what the substance is. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("It is true that interpretations of a statute which would produce

12

absurd results are to be avoided."). Mr. Davey provides no reason to believe Congress intended to render the CSA's careful classification of substances irrelevant, and to instead permit the criminalization of drug use as to a specific group of users unless the CSA's classifications were set out in the statute criminalizing the use. *See Raich*, 545 U.S. at 14. Nor can we find one.

The better reading is that § 922(g)(3) determines unlawfulness *through* the legal status of the controlled substance. The term "unlawful" does modify "user," but whether someone is an "unlawful user"—"*i.e.*, an individual who uses drugs 'contrary to' or 'unauthorized by law,'" Appellant's Br. at 12, can be determined by looking to the legality of using the specific controlled substance. Put another way, what makes a "user" fall in the category of "unlawful" is his use of a substance contrary to law.

This correct construction of the term also easily disposes of Mr. Davey's surplusage argument. He states that "if use alone qualifies a drug user as an 'unlawful user' under [§] 922(g)(3), then the word 'unlawful' is entirely superfluous and does no work." *Id.* at 13. But his surplusage argument is circular: it holds only if we adopt Mr. Davey's position that the lawfulness of the controlled substance being used is irrelevant. Under the correct construction of the term "unlawful user," unlawful is not superfluous. "Most of [the] substances . . . listed in Schedules II through V [] 'have a useful and legitimate medical purpose,'" *Raich*, 545 U.S. at 24 (quoting 21 U.S.C. § 801(1)), and can be lawfully used so they long as they are "lawfully obtained," 21 U.S.C. § 802(27) (defining "ultimate user" as one "who has lawfully obtained, and who possesses, a controlled substance"); *id*. § 844(a) (granting that a person may lawfully

13

possess a controlled substance "pursuant to a valid prescription or order[] from a practitioner"). Thus, the same user can be a lawful user or an unlawful user depending on the classification of the particular drug under the CSA and how the drug was procured. *Id.* § 802(27); *id.* § 844(a).

Additionally, while no circuit has conducted a textual analysis of the term "*unlawful* user" in the context of § 922(g)(3) or been presented with Mr. Davey's specific argument, there is circuit consensus agreeing with our focus on the unlawfulness of the controlled substance used. And Mr. Davey has not convinced us to depart from our sister circuits on this issue. *See United States v. Thomas*, 939 F.3d 1121, 1130 (10th Cir. 2019) ("As a general rule, we decline to create a circuit split unless there is a compelling reason to do so." (quoting *Padilla-Ramirez v. Bible*, 882 F.3d 826, 836 (9th Cir. 2017))).

Indeed, every circuit to address the issue, albeit mostly in a cursory fashion, has held that what renders someone an "*unlawful* user" turns on the legal status of the drug. The Fifth Circuit, for instance, recently defined "unlawful user" as "someone who uses *illegal* drugs regularly and in some temporal proximity to the gun possession." *United States v. Daniels*, 124 F.4th 967, 970–71 (5th Cir. 2025) (emphasis added). Similarly, the Ninth Circuit stated that "a common sense meaning" of the phrase "unlawful user" covered the defendant's regular use of heroin because heroin "has no legal use by laymen" and its use "by laymen is not permissible in any circumstance."[5] *Ocegueda*, 564

---

[5] Mr. Davey argues that the statement in *United States v. Ocegueda*, 564 F.2d 1363, 1365 (9th Cir. 1977), that "[t]he use of heroin by laymen is not permissible in any circumstance" was based in the fact that "California law prohibited the defendant

F.2d at 1365. And both the Sixth and Seventh Circuits have adopted the ATF's definition of "unlawful user" as someone "who regularly ingests controlled substances in a manner except as prescribed by a physician."[6] *United States v. Yancey*, 621 F.3d 681, 682 (7th Cir. 2010) (per curiam); *see United States v. Burchard*, 580 F.3d 341, 351 (6th Cir. 2009). Further, the Eighth Circuit has concluded the ATF's definition of "unlawful user"—as adopted by a district court in its jury instructions—was "entirely consistent with any standard for unlawful use to be gleaned from [its] prior decisions." *United States v. Turnbull*, 349 F.3d 558, 562 (8th Cir. 2003), *cert. granted, judgment vacated*, 543 U.S. 1099 (2005), *and opinion reinstated*, 414 F.3d 942 (8th Cir. 2005). Although not controlling, these decisions from our sister circuits support our reading of the term.

from using heroin," not on federal law. Reply Br. at 13. But in that passage, the Ninth Circuit based its conclusion that heroin "is not permissible in any circumstance" on the fact that "federal law classifies heroin as lacking any accepted medical use." *Ocegueda*, 564 F.2d at 1365 (citing 21 U.S.C. § 812(b)(1)(B)). That California also proscribed the use of heroin "further bolster[ed] th[at] conclusion." *Id.* at 1366.

[6] Mr. Davey dismisses the Seventh Circuit's definition of "unlawful user" because the court "defer[red] to governmental agency regulations when interpreting [§] 922's criminal prohibitions," Reply Br. at 14, and "defining crimes and fixing penalties are legislative," not executive, "functions." Appellant's Br. at 27 (quoting *United States v. Evans*, 333 U.S. 483, 486 (1948)). But the Seventh Circuit does not state it was "deferring" to the ATF's definition, rather, it cited the ATF's regulation alongside Fifth and Sixth Circuit caselaw consistently defining "unlawful user." *See United States v. Yancey*, 621 F.3d 681, 682 (7th Cir. 2010) (per curiam) (citing *United States v. Burchard*, 580 F.3d 341, 352 (6th Cir.2009); *United States v. Patterson*, 431 F.3d 832, 839 (5th Cir.2005)). Here, we arrive at our definition of the term "unlawful user" independent of the ATF's definition.

### *C.    Connection Between Possession and Use*

Mr. Davey advances two arguments as to why "it is not contrary to any law for Mr. Davey to *use* drugs (even if it is unlawful for him to *possess* them)." Appellant's Br. at 12. First, he states that the drug possession statute, 21 U.S.C. § 844(a), is irrelevant because it is not cross-referenced in § 922(g)(3). Second, he contends that if possession encompassed use, Congress would have expressly said so. We address each argument in turn.

### 1.    Looking Beyond § 922(g)(3) to Determine Unlawful Conduct

Mr. Davey tells us we cannot consider the statute criminalizing the possession of Schedule I drugs like heroin, 21 U.S.C. § 844(a), to determine whether the use of heroin is illegal because § 844(a) is not cross-referenced in § 922(g)(3). He states that § 844(a) is not relevant "considering [the] lack of a cross-reference," especially given that Congress did cross reference § 802 (the statute defining controlled substances) in § 922(g)(3). Reply Br. at 6.

We disagree for three reasons. First, by Mr. Davey's own argument, determining whether conduct is lawful under § 922(g)(3) *requires* looking to whether the conduct is "contrary to law or unauthorized by law." Appellant's Br. at 11 (quoting Black's Law Dictionary 1705 (rev. 4th ed. 1968)). And ascertaining what is contrary to or unauthorized by law *requires* looking to the relevant laws governing the conduct,

16

whether cross referenced or not. That is, we cannot assess whether the conduct is unlawful without consulting the applicable law on controlled substances.

Second, Congress knows how to limit criminal liability to conduct made unlawful by a specific statute. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). And Congress did so in other parts of § 922, by limiting criminal liability to conduct that "is unlawful under this section." *See* 18 U.S.C. § 922(s)(7)(A); *id*. § 922(t)(6)(A). But tellingly, it did not do so in § 922(g)(3). Thus, Congress has given us no indication it intended to alter "unlawful"'s ordinary meaning in § 922(g)(3) by restricting criminal liability to unlawful conduct described solely in the statute.

Third and finally, one of Mr. Davey's proposals for how to determine whether someone is an unlawful user—e.g., looking to whether some state law criminalizes use—belies his argument that we cannot "look[] beyond § 922(g)(3) to other statutes" to determine what is unlawful. Reply Br. at 4 (quoting Appellee's Br. at 21). He states that "the Kansas legislature could pass a statute tomorrow prohibiting the use of controlled substances, a result that would put [him] plainly in the category of 'unlawful user' under § 922(g)(3)." Appellant's Br. at 29. But in the same breath Mr. Davey argues we may not consider other statutes that are not cross-referenced in § 922(g)(3). *See* Reply Br. at 9 (stating the Government "has provided no persuasive reason to interpret [§] 922(g)(3) by 'looking beyond § 922(g)(3) to other statutes.'" (quoting Appellee's Br. at 21)). We agree

17

that a state law could independently render a person's use unlawful, but that is exactly the point: unlawfulness must be determined by "looking beyond § 922(g)(3) to other statutes." Appellee's Br. at 21.; *see, e.g.*, Wyo. Stat. Ann. § 35-7-1039 (2024) (prohibiting the use "of a controlled substance listed in Schedules I, II, or III except when administered or prescribed by or under the direction of a licensed practitioner")

**2.      Our Caselaw on Drug Possession and Drug Use**

Now that we have established that (1) a controlled substance's legality determines whether a person's use of the substance is "unlawful" under § 922(g)(3), and (2) statutes beyond § 922(g)(3) must be consulted to determine whether someone's use is unlawful, we turn to the final issue of whether Mr. Davey's daily use of heroin was unlawful based on the possession statute, 21 U.S.C. § 844(a). Under basic principles of statutory interpretation and our precedent, we conclude that it was.

Mr. Davey contests that "drug use *is* drug possession." Reply Br. at 15. But apart from the arguments discussed above, nowhere does he explain how someone could use a drug *without* possessing it. Instead, he maintains that use and possession are "not truly synonymous." *Id.* But that is not the district court's nor the Government's position; it is that use necessarily involves possession—not vice versa. Mr. Davey concludes that reading "possession" to include "use" is a "term-of-art-reading," yet he offers no analysis or authority as to *how* a person could use a drug *without* possessing it. *Id*. at 4.

Indeed, our caselaw has long rejected the argument that "[drug] use does not constitute possession." *United States v. Rockwell*, 984 F.2d 1112, 1114 (10th Cir. 1993), *abrogated on other grounds by Johnson v. United States*, 529 U.S. 694 (2000). In

18

*Rockwell*, we affirmed the district court's termination of a defendant's supervised release for possession of a controlled substance in violation of 18 U.S.C. § 3583(g). We reasoned that "[t]here can be no more intimate form of possession than use," *id.,* stating it would "just [be] errant sophistry" to claim "that somebody has knowingly and willfully used a controlled substance and simultaneously claim[] that that does not necessarily imply possession." *Id.* at 1115 (quotation marks omitted).

Since *Rockwell*, we have continued to hold that "the connection drawn in *Rockwell* between use and possession is simply a matter of common sense." *Hammonds*, 370 F.3d at 1036. This is because "[i]nferring possession of a drug from the consumption of that drug is just as sensible as inferring, from the statement 'I ate a hamburger for lunch,' that the person possessed the hamburger before wolfing it down." *Id*. (quoting *United States v. Trotter*, 270 F.3d 1150, 1153 (7th Cir. 2001)).

Mr. Davey argues this line of caselaw inferring drug possession from drug use is not on point. He states that because these cases involve "violations of supervised release" they have "literally [] nothing to do with [§] 922(g)(3)." Reply Br. at 14. And he asserts that "this [c]ourt's interpretation of differently []worded phrases in other statutes that were enacted well after [§] 922(g)(3) tells us nothing about what Congress meant when it used the phrase 'unlawful user' decades before in [§] 922(g)(3)." *Id*.

True enough, these cases arose in the context of the supervised release statute, not § 922(g)(3). But we see no ground on which to distinguish the analysis of what drug use and simple possession entail, and Mr. Davey fails to offer one. In the above cases, we do not rely on any specialized meaning of use or possession, nor do we invoke any

19

consideration specific to the context of supervised release. Rather, we analyze the ordinary understanding of drug use and simple possession. Like the district court, we decide it is appropriate to apply the reasoning from *Rockwell* and *Hammonds* to § 922(g)(3) to conclude that Mr. Davey's admission of daily heroin use necessarily encompasses unlawful possession of heroin. Further, where heroin is a Schedule I substance, there is no possible lawful use or possession.

Because "[t]o use [a controlled substance], [one] must first possess it," we conclude that regular heroin use is unlawful under § 922(g)(3) because its possession is unlawful under § 844(a).[7] *People v. Cagle*, 751 P.2d 614, 620 (Colo. 1988) (en banc).

### IV.     CONCLUSION

Davey's proposed interpretation of the term "unlawful user" contravenes the CSA's careful categorization of controlled substances and its purpose to "foster the beneficial use of" medically useful controlled substances. *Raich*, 545 U.S. at 24. Section 922(g)(3) is not a prohibition on the use of drugs by a specific class of persons; it is a prohibition on the use of drugs that are unlawful to use, either entirely or as used by the defendant. Because "[t]he use of heroin by laymen is not permissible in any circumstance" and a person cannot use heroin without first violating § 844(a) by

---

[7] We do not engage with Mr. Davey's rule of lenity argument because we find no ambiguity in the statutory language of § 922(g)(3). *Shular v. United States*, 589 U.S. 154, 165 (2020) ("The rule [of lenity] 'applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute.'" (quoting *United States v. Shabani*, 513 U.S. 10, 17 (1994))).

possessing it, Mr. Davey is an "unlawful user" under § 922(g)(3). *Ocegueda*, 564 F.2d at 1365; *see also Raich*, 545 U.S. at 24. We thus AFFIRM the district court's denial of Mr. Davey's motion to dismiss and his conviction for violating § 922(g)(3).